IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JASON R. RIVERA,

        Plaintiff,

v.                                                            CIV. No. 96-1092 JP/LFG

UNITED STATES OF AMERICA and
THOMAS POULIOT, in his personal capacity,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On August 25, 1998 Plaintiff filed his "Motion Under Rule 56 for Partial Summary Judgment on the Issue of Reasonable Articulable Suspicion to Stop" (Doc. No. 62). For the reasons stated below, the motion should be denied at this time, but Plaintiff may renew his argument after all evidence bearing on the issue of reasonable suspicion is presented at the non-jury trial.

**Factual Background**

On a motion for summary judgment, I must consider all evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598 (1970) (stating that disputed material facts must be viewed in the light most favorable to the non-moving party). The facts of this case, based on the pleadings, affidavits, depositions, and other admissible evidence on file, and viewed in the light

most favorable to the Defendant, are as follows.

On the evening of March 16, 1995, Defendant Pouliot, an off-duty border patrol agent, was at a bowling alley with friends (who were also off-duty border patrol agents) in Las Cruces, New Mexico. While Defendant Pouliot was inside the bowling alley, two cars were broken into in the parking lot outside. One of the vehicles belonged to Agent Parks, and the other belonged to Agent Dalton. Pouliot and his friends went out to the parking lot to investigate the break ins and discovered that Agent Dalton's trique bag had been stolen.

While Pouliot was in the parking lot investigating the theft, the bowling alley's security guard mentioned that he had heard whistling coming from one corner of the parking lot and that such whistling was often used by car thieves to warn their cohorts that the guard was approaching. Thereafter, Pouliot noticed footprints leading away from the vehicles toward the corner of the parking lot from which the guard had heard the whistling. Pouliot got into his truck, which was his own personal vehicle, and drove slowly into the street in the direction from which the guard had heard whistling. While Pouliot was driving slowly east, he encountered Plaintiff who was riding his bicycle going west. It is not clear whether Plaintiff was riding toward the parking lot of the bowling alley or away from it. Pouliot did not pay attention to Plaintiff until he saw Plaintiff "lunge his neck over" to look at Pouliot. In his rear view mirror, Pouliot could see Plaintiff "rubber-necking," looking at Pouliot over Plaintiff's shoulder while he continued to ride his bicycle westerly. Pouliot then stopped his truck and backed up toward Plaintiff, who rode his bicycle off the street to the front of a house. Plaintiff got off the bike and went between two parked cars, while Pouliot continued to back up until he could see Plaintiff. Pouliot heard Plaintiff yelling at something, which startled Pouliot because he thought that there may have been other

2

people in the area he had not seen earlier and of whom he was not aware. Pouliot was also concerned because the area is known for shootings and gang activity. At this point, Plaintiff and Pouliot were able to see each other, as the distance between them was about fifteen to twenty feet. Pouliot took out his Immigration and Naturalization Service badge and pressed it up against the windshield of his truck with his right hand. Plaintiff looked at the badge, and Pouliot opened the door to his truck.

Plaintiff then picked up his bicycle and threw it about six to ten feet against a nearby fence. Then, Plaintiff started running toward the nearest car and put his hands up underneath his shirt, which frightened Pouliot, who thought Plaintiff might have a gun. Pouliot grabbed his revolver, which was on the seat of his truck, and got out of his car holding his badge and his gun down against his leg. Pouliot yelled at Plaintiff to "freeze," and when Pouliot could see that Plaintiff had continued moving and had reached the second car, Pouliot yelled "stop." Plaintiff then jumped over a fence and disappeared in the darkness.

## **Summary Judgment Standard**

Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non- moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Thrasher v. B& B Chemical Co., 2 F.3d 995, 996 (10th Cir. 1993). The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F. 2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate

3

specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U. S. 574, 587 (1986). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, Harsha v. United States, 590 F. 2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U. S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 322.

## Analysis

In his reply brief (Doc. No. 78 at 3), Plaintiff acknowledges that he seeks summary judgment only on the issue of whether Defendant Pouliot had reasonable suspicion to conduct an investigatory stop of Plaintiff and concedes that this question is entirely separate from the question of whether Pouliot actually stopped or detained Plaintiff. Plaintiff seeks summary judgment only on the issue of reasonable suspicion.

A detention is justified at its inception only if law enforcement officials are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the detained individual may be engaged in criminal activity. See United States v. Cantu, 87 F.3d 1118, 1121 (10th Cir.), cert. denied, 117 S.Ct. 265 (1996). To determine what constitutes reasonable suspicion, the court must look at the totality of the

4

circumstances taken in consideration with the officer's own personal experiences in detecting illegal activity. United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975); United States v. Cortez, 449 U.S. 411, 417-18 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-18. Reasonable suspicion is a less demanding standard than probable cause and can arise from information that is less reliable than that required to show probable cause. Alabama v. White, 496 U.S. 325, 330 (1990).

Unfortunately, the evidence accompanying Plaintiff's motion contains many gaps, and crucial information on the issue of whether Pouliot's suspicions of the Plaintiff were reasonable is missing.[1] For example, Pouliot's deposition testimony does not clarify whether Plaintiff was riding toward the bowling alley or away from it in a manner that might reasonably be construed as flight from a crime scene. The record is silent on the distance between the site of the parties' confrontation and the bowling alley. There is no information regarding the length of time that elapsed between the theft from Agent Dalton's truck and the time that Plaintiff and Pouliot encountered each other on the street. The record also does not reveal whether there were any other people in the area, or if Plaintiff was the only person Pouliot saw beyond the bowling alley's parking lot.[2] All of this information would be helpful to a determination of whether Defendant

---

[1] In fact, at the inception of the encounter the Plaintiff had reason to be just as suspicious of Pouliot as Pouliot was of the Plaintiff. Pouliot was not in uniform, and until Pouliot displayed his badge, Plaintiff had no way of knowing that Pouliot was a law enforcement officer. Because he was riding his bicycle alone at night in a high crime area, Plaintiff could have been justifiably leery of Pouliot when Pouliot backed up his truck in pursuit of the Plaintiff.

[2] In his deposition testimony, Pouliot states that his suspicions were aroused by the "look" that Plaintiff gave him as they met on the road and the fact that Plaintiff continued to "rubberneck" after they passed each other. Pouliot Deposition, Vol. II, at 92, 152. However, the

Pouliot had reasonable suspicion to conduct an investigative stop of the Plaintiff, if such a stop did in fact occur.

Due to these gaps in the record, it would be better to decide the reasonable suspicion issue at the non-jury trial, even though from the spotty factual record it appears that reasonable suspicion likely did not exist. As Plaintiff has acknowledged, there is a genuine issue of material fact regarding whether Pouliot eventually seized Plaintiff that must be decided at trial.[3] Presumably, the factual record at trial will be more complete than that presented in support of the motion for summary judgment. Consequently, Plaintiff's motion should be denied at this time,

---

Tenth Circuit has declined to find reasonable suspicion on similarly thin facts. See, e.g., United States v. Davis, 94 F.3d 1465, 1470 (10th Cir. 1996) (no reasonable suspicion to stop man who parked outside known criminal establishment, made and broke eye contact with police, kept hands in pockets, did not stop when officers requested, and had a criminal record); United States v. Jones, 998 F.2d 883 (10th Cir. 1993) (no reasonable suspicion to stop two black men in black Mercedes after a report that two black men had pounded on apartment door several miles away, that one was armed, and that both had left in black Mercedes). See also United States v. Caicedo, 85 F.3d 1184, 1190 (6th Cir. 1996) (no reasonable suspicion to stop arriving bus passenger who appeared nervous in the presence of police); United States v. Garcia-Camacho, 53 F.3d 244, 246-47 (9th Cir. 1995) (no reasonable suspicion to stop Hispanic males in heavy truck near border who looked nervous, did not acknowledge police presence, and drove faster than flow of traffic).

[3]Plaintiff's version of events varies significantly from that of Pouliot. The following facts are taken from Plaintiff's deposition testimony (Doc No. 64, exhibit 3) and various briefs in the file. See, e.g., Doc. Nos. 20, 62, 72. According to Plaintiff, on the evening of March 16, 1992, he was riding his bike to a friend's house when Pouliot, driving an unmarked truck, pulled up next to Plaintiff and, for no apparent reason, stopped beside Plaintiff. Pouliot then drew his weapon and pointed it at Plaintiff, yelling "get the fuck out of here." Plaintiff screamed, dropped his bike, and hid between two parked cars. Plaintiff then jumped over a fence and ran to a friend's house in terror. According to Plaintiff, Pouliot never displayed his badge. Pouliot walked around the area with his weapon drawn, and then he and Ken Dalton, a fellow Border Patrol Agent, picked up Plaintiff's bike and drove away. I am not certain that, under Supreme Court and Tenth Circuit precedent, the conduct of which Plaintiff accuses Pouliot constitutes a seizure under the Fourth Amendment. Because Pouliot has not raised the issue, I do not reach that question in this Memorandum Opinion. However, if at trial it is determined that Plaintiff was not seized, then the issue of reasonable suspicion would become moot.

and the issue of reasonable suspicion should be decided at the non-jury trial, after the factual record is developed more fully.

IT IS THEREFORE ORDERED that Plaintiff's "Motion Under Rule 56 for Partial Summary Judgment on the Issue of Reasonable Articulable Suspicion to Stop" (Doc. No. 62) is DENIED and the reasonable suspicion issue will be decided at the non-jury trial.

_____
**UNITED STATES DISTRICT JUDGE**